IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
Richmond Division

|  |  |  |
|---|---|---|
| KEVIN PRIEST *et al.*, *on behalf of themselves and all others similarly situated*, Plaintiffs, | ) ) ) ) ) ) | |
| v. | ) ) | Civil Action No. 3:21cv712 (DJN) |
| DBI SERVICES, LLC, Defendant. | ) ) ) ) | |

## REPORT AND RECOMMENDATION

Pursuant to 28 U.S.C. § 636(b)(1)(C), this matter comes before the Court on the Motion for Default Judgment (ECF No. 12) filed by Kevin Priest, Antone Harris, and Marcus Wallace (collectively, "Plaintiffs"). Because Plaintiffs fail to allege facts sufficient to satisfy each of the essential elements of Plaintiffs' claim, the undersigned RECOMMENDS that the Court deny the Motion for Default Judgment without prejudice.

### I. BACKGROUND

Plaintiffs seek default judgment on their sole claim, which alleges that their former employer, DBI Services, Inc. ("Defendant"), violated the Worker Adjustment and Retraining Notification ("WARN") Act, 29 U.S.C. § 2101, *et seq.*, by not providing at least 60 days' notice before terminating Plaintiffs and similarly situated employees in a "mass layoff and/or plant closing." (First Am. Class Action Compl. ("Am. Compl.") ¶ 15 (ECF No. 4).) Plaintiffs seek to recover back pay and benefits, interest, and attorney's fees and costs. (Am. Compl. at 8–9.)

1

### A. The WARN Act

Congress enacted the WARN Act in 1988 "to provide notice of sudden, significant employment loss so that workers could seek alternative employment and their communities could prepare for the economic disruption of a mass layoff." *Meson v. GATX Tech. Servs. Corp.*, 507 F.3d 803, 808 (4th Cir. 2007) (citing *Bader v. N. Line Layers, Inc.*, 503 F.3d 813 (9th Cir. 2007) and 20 C.F.R. § 639.1(a)). Accordingly, the WARN Act requires certain employers to provide affected employees and appropriate government authorities with 60 days' notice before ordering a "plant closing or mass layoff." 29 U.S.C. § 2102(a). The Act defines a "plant closing" as a temporary or permanent closing of a "single site of employment" that affects 50 or more employees within a 30-day period. 29 U.S.C. § 2101(a)(2). Similarly, the Act defines a "mass layoff" as a reduction in workforce that affects (i) at least 33 percent of the employees and a minimum of 50 employees or (ii) at least 500 employees, over a 30-day period at a "single site of employment." 29 U.S.C. § 2101(a)(3)(B). Plaintiffs seeking to vindicate their rights under the WARN Act may do so individually and for "other persons similarly situated" in the United States District Court where the violation occurred or the employer does business. 29 U.S.C. § 2104(a)(5).

### B. Procedural History

The operative complaint is the Amended Complaint, which Plaintiffs filed on February 23, 2022, on behalf of themselves and other employees who are similarly situated. An affidavit of service (ECF No. 6) indicated that the Amended Complaint was sent by certified mail to "DBI Services LLC" via "Corporation Service Company at 100 Shockoe Slip, Floor 2, Richmond,

2

Virginia 23219," on February 24, 2022. The certified mail receipt (ECF No. 6-1) indicated that the Amended Complaint was received at such location on March 3, 2022.[1]

According to the Amended Complaint, Defendant hired Plaintiffs to primarily perform "highway and rest stop maintenance, landscaping, and similar services within the Commonwealth of Virginia." (Am. Compl. ¶ 7.) Plaintiffs' "primary work location" was "one of Defendant's yard or similar business operation location[s] in Richmond, Virginia." (Am. Compl. ¶ 11.) In addition to Plaintiffs, Defendant also previously employed more than 100 employees "based out of yards and similar work locations" in Virginia. (Am. Compl. ¶ 6.)

On October 22, 2021, Defendant "ordered the termination of the Plaintiffs' employment"—along with all other similarly situated employees working in Virginia—without any prior warning or notice to such employees. (Am. Compl. ¶ 14.) In the 60 days following their terminations, Defendant failed to pay Plaintiffs their "wages, salary, commissions, bonuses, accrued holiday pay and accrued vacation," and failed to provide "pension and 401(k) contributions, [] other employee benefits under ERISA, and . . . medical expenses." (Am. Compl. ¶ 38.)

Plaintiffs contend that the employment terminations violated the WARN Act because "Defendant failed to provide at least sixty (60) days' prior notice before terminating [Plaintiffs and similarly situated employees]." (Am. Compl. ¶ 37.) Plaintiffs allege that the WARN Act was triggered, in part, because the terminations constituted a "mass layoff and/or plant closing." (Am. Compl. ¶ 32 (citation and internal quotation marks omitted).) Plaintiffs asserted that this "mass layoff and/or plant closing" applied to all of Defendant's "Virginia-based yards," which resulted

---

[1] The original complaint (ECF No. 1) was filed on November 11, 2021, and the Clerk of this Court issued a summons the following day (ECF No. 3). An affidavit of service (ECF No. 5) indicated that the summons and original complaint were sent by certified mail to Defendant's registered agent, the Corporation Service Company, which was located at 100 Shockoe Slip, Floor 2, Richmond, Virginia 23219.

in employment loss for at least 50 Virginia-based employees and "33% of Defendant's Virginia-based workforce." (Am. Compl. ¶ 35.) Plaintiffs seek back pay and benefits, interest, and attorney's fees and costs. (Am. Compl. 8–9.)

After Defendant failed to respond or appear in the case, Plaintiffs filed a Motion for a Clerk's Entry of an Order of Default (ECF No. 8), and the Clerk filed an Entry of Default on April 22, 2022 (ECF No. 11). Following the Entry of Default, Plaintiffs filed a Motion for Default Judgment (ECF No. 12), arguing that their claims were within the scope of the WARN Act's protections.[2] Plaintiffs requested damages in the form of back pay and benefits totaling $22,132.20 for the 60-day notice period required by the WARN Act. (Mot. Def. J. at 4–5.) Plaintiffs also requested attorney's fees and litigation expenses, pursuant to 29 U.S.C. § 2104(a)(6) and Federal Rule of Civil Procedure 54(d), totaling $8,015.00 in fees and $402.00 in expenses. (Mot. Def. J. at 5–9.) Plaintiffs attached four affidavits (ECF Nos. 12-1 through 12-4) from each of the three Plaintiffs and their counsel, supporting the allegations in the Amended Complaint and the calculations of their requested damages, fees, and costs.

## II. ANALYSIS

Under Federal Rule 55, a party must take two steps when seeking to obtain a default judgment: entry of default by the clerk and a subsequent motion for default judgment. *Royal v. Lee*, No. 1:17-cv-261, 2018 WL 10772683, at *1 (E.D. Va. Nov. 6, 2018) ("An entry of default by the Clerk under Rule 55(a) constitutes a general prerequisite for a subsequent default judgment under Rule 55(b)."). First, the clerk of court files an entry of default "[w]hen a party against whom

---

[2]   Although the Amended Complaint included class action allegations, Plaintiffs did not seek resolution of their class claims in their Motion for Default Judgment. Accordingly, the Court does not consider them in this Report and Recommendation. *See Portillo v. King of Pita Bakery Inc.*, No. 1:12CV1103, 2013 WL 3479651, at *1 n.1 (E.D. Va. July 9, 2013).

a judgment for affirmative relief is sought has failed to plead or otherwise defend." Fed. R. Civ. P. 55(a). Second, following the clerk's entry, a party may move for a default judgment under Federal Rule 55(b)(1)—which permits the clerk to enter default judgment under certain circumstances—or Federal Rule 55(b)(2), which permits the court to enter default judgment in all other situations. *See STL Emirates Logistics, LLC v. Tamerlane Glob. Servs., Inc.*, No. 2:14CV51, 2014 WL 12662306, at *1 (E.D. Va. Aug. 4, 2014) (distinguishing between default judgments obtained under Federal Rule 55(b)(1) and (b)(2)).

Generally, a defendant in default concedes the factual allegations in the complaint but does not admit any conclusions of law, liability, or damages. *Wilcox v. Transmodal Sols., LLC*, 473 F. Supp. 3d 574, 581, 584 (E.D. Va. 2020); *see* Fed. R. Civ. P. 8(b)(6) ("An allegation—other than one relating to the amount of damages—is admitted if a responsive pleading is required and the allegation is not denied."). Instead, the court must independently determine whether the allegations support defendant's liability and the appropriate amount of damages. *Id.* at 582, 584. Additionally, "[a] court must have both subject matter jurisdiction and personal jurisdiction over a defaulting party before it can render a default judgment." *United States v. Brooks*, No. 1:22-CV-0101, 2022 WL 1812254, at *4 (E.D. Va. June 1, 2022).

In the instant case, the Clerk entered an Entry of Default pursuant to Federal Rule 55(a). Plaintiffs subsequently moved for default judgment under Federal Rule 55(b)(2), which permits the court to enter a default judgment based on the allegations in the complaint or by conducting a hearing.

### A. Jurisdiction

Federal district courts have subject matter jurisdiction over all civil actions arising under the United States Constitution, federal law, or treaties. 28 U.S.C. § 1331. Here, Plaintiffs assert

one claim under the WARN Act, a federal statute, and therefore this Court has subject matter jurisdiction over Plaintiffs' claim.

When adjudicating a default judgment, a court will have personal jurisdiction over the defaulting party if the "defendant has been brought within the court's jurisdiction by adequate service of process." *Goldbelt Wolf, LLC v. Operational Wear Armor*, *LLC*, No. 1:15cv1269, 2016 WL 1756487, at *1 (E.D. Va. May 3, 2016) (citing *Armco, Inc. v. Penrod-Stauffer Bldg. Sys., Inc.*, 744 F.2d 1087, 1089 (4th Cir. 1984)). Under the Federal Rules, a corporation may be served, in part, by delivering a copy of the summons and complaint to an officer, managing or general agent, or any other agent authorized by law to receive service of process. Fed. R. Civ. P. 4(h)(1)(B); *see Goldbelt Wolf*, 2016 WL 1756487, at *1.

Here, Plaintiffs properly served Defendant with process. The affidavits of service indicated that the summons, Complaint, and Amended Complaint were all sent to Defendant's registered agent, the "Corporation Service Company." The certified mail label also specifically indicated that Defendant received the Amended Complaint on March 3, 2022. Because Plaintiffs properly served Defendant with process, this Court has personal jurisdiction over Defendant.

### B. Liability

To determine a defendant's liability upon a motion for default judgment, a court must "examine the essential elements of the plaintiff's claims and determine whether the plaintiff has pled facts sufficient to satisfy those elements." *Wilcox*, 473 F. Supp. 3d at 582 (brackets omitted) (quoting *Portfolio Recovery Assocs. v. Portfolio Recovery Grp., LLC*, No. 2:12cv649, 2013 WL 5723869, at *2 (E.D. Va. Oct. 18, 2013)). In the present case, Plaintiffs argue that Defendant violated the WARN Act when it failed to provide at least 60 days of notice before ordering a "plant closing or mass layoff" that terminated Plaintiffs' employment.

The WARN Act requires certain employers to provide affected employees and appropriate government authorities with 60 days' notice before ordering a "plant closing or mass layoff." 29 U.S.C. § 2102(a). In order to recover for violations of this statute, a plaintiff must demonstrate that (1) the defendant was a covered "employer" under the statute, (2) the defendant ordered a "plant closing or mass layoff," (3) the defendant failed to give the requisite 60 days' notice of such closing or layoff, and (4) the plaintiff was an "aggrieved employee" as defined by the statute. *In re Circuit City Stores, Inc.*, No. 08-35653-KRH, 2010 WL 120014, at *2 (Bankr. E.D. Va. Jan. 11, 2010).

In the present case, the Amended Complaint and Plaintiffs' affidavits establish sufficient facts to show that Defendant was an "employer" as defined by the WARN Act at the time of the terminations,[3] and that Defendant failed to give 60 days' notice of Plaintiffs' termination. However, Plaintiffs have failed to allege sufficient facts establishing that Defendant ordered a "plant closing or mass layoff"—both of which require that the related terminations occur at a "single site of employment."

> The term "plant closing" means
>
> the permanent or temporary shutdown of a *single site of employment*, or one or more facilities or operating units within a single site of employment, if the shutdown results in an employment loss at the single site of employment during any 30-day period for *50 or more employees* excluding any part-time employees.

29 U.S.C § 2101(a)(2) (emphases added). The term "mass layoff" means a reduction in work force at a "*single site of employment*" during any 30-day period that affects either (i) "at least 33 percent of the employees . . . *and* [] at least 50 employees," or (ii) at least 500 employees. 29 U.S.C § 2101(a)(3)(B) (emphases added).

---

[3] The term "employer" in the WARN Act means, in part, "any business enterprise that employs . . . 100 or more employees, excluding part-time employees." 29 U.S.C § 2101(a)(1)(A). Here, Plaintiffs asserted in the Amended Complaint that Defendant employs more than 100 employees in Virginia. (Am. Compl. ¶ 6.)

7

Department of Labor regulations define a "single site of employment" to be "either a single location or a group of contiguous locations." 20 C.F.R. § 639.3(i)(1). The general rule is that "separate facilities are separate sites." *Davis v. Signal Int'l Texas GP, L.L.C.*, 728 F.3d 482, 485 (5th Cir. 2013) (quoting 54 Fed Reg. 16042, 16050 (Apr. 21, 1989)); *see also Rifkin v. McDonnell Douglas Corp.*, 78 F.3d 1277, 1280 (8th Cir. 1996); *Jordan v. Mechel Bluestone, Inc.*, No. 5:16-CV-04413, 2018 WL 1582727, at *3 (S.D.W. Va. Mar. 29, 2018) (citing *Davis*, 728 F.3d at 485). The regulations clarify that, for mobile workers without a fixed place of work, their "home base" will be deemed the "single site of employment":

> For workers whose primary duties require travel from point to point, who are out stationed, or whose primary duties involve work outside any of the employer's regular employment sites (e.g., railroad workers, bus drivers, salespersons), the single site of employment to which they are assigned as their *home base*, from which their work is assigned, or to which they report *will be the single site* in which they are covered for WARN purposes.

20 C.F.R. § 639.3(i)(6) (emphases added). This latter regulation was "intended to apply only to truly mobile workers without a regular, fixed place of work." *Meson*, 507 F.3d at 809.

The regulations also contemplate that, in certain instances, geographically separate sites can constitute a "single site of employment." For instance, "[s]eparate buildings or areas which are not directly connected or in immediate proximity may be considered a single site of employment if they are in *reasonable geographic proximity, used for the same purpose, and share the same staff and equipment*," such as multiple warehouses in the same area that rotate employees. 20 C.F.R. § 639.3(i)(3) (emphasis added).

Whether an employment location or locations constitute a "single site of employment" is a mixed question of law and fact. *Davis*, 728 F.3d at 485; *Bader*, 503 F.3d at 817; *Frymire v. Ampex Corp.*, 61 F.3d 757, 765 (10th Cir. 1995); *Jordan*, 2018 WL 1582727, at *3 (citing *Davis*, 728 F.3d at 485). The relevant characteristics of the facility or facilities in dispute are factual issues,

8

while the issue of whether those characteristics support a "single site of employment" conclusion is a question of law. *Davis*, 728 F.3d at 485.

Although Plaintiffs have alleged that Defendant fired at least 33% of its workforce and at least 50 employees in all of Defendant's "Virginia-based yards," Plaintiffs have not alleged sufficient facts for the Court to conclude that all of Defendant's "Virginia-based yards," collectively, constitute a "single site of employment."[4] The Amended Complaint indicates that the "Virginia-based yards" are located "throughout the Commonwealth of Virginia," (Am. Compl. ¶ 6), which implies that they are geographically separate and therefore not a "single site of employment," under the general rule that "separate facilities are separate sites." *See Davis*, 728 F.3d at 485.

Further, Plaintiffs have not alleged facts showing that these separate yards meet the regulations' requirements for an exception to this general rule. Specifically, Plaintiffs have not alleged facts to sufficiently show that the Virginia-based yards are within "reasonable geographic proximity, used for the same purpose, and share the same staff and equipment." *See* 20 C.F.R. § 639.3(i)(3). The Amended Complaint and affidavits do not contain any allegations regarding how many yards Defendant managed in Virginia, the number of employees at each yard, where such yards were specifically located, or whether the employees were shared or rotated to multiple yards.

In fact, the information alleged by Plaintiffs—that Plaintiffs' work performing "highway and rest stop maintenance, landscaping, and similar services"—suggests that Plaintiffs lacked a

---

[4] Plaintiffs have not specified whether Defendant's October 21, 2021 terminations constituted a "plant closing" or a "mass layoff." Regardless, both definitions require, in part, that an employer cause employment loss to at least 50 employees at a "single site of employment." 29 U.S.C. § 2101(a)(2)–(3).

9

"fixed place of work" and were therefore mobile workers, as contemplated by 20 C.F.R. § 639.3(i)(6). If that is the case, their "home base, from which their work is assigned" was their "single site of employment." *See id*. Because Plaintiffs allege their "primary work location" was "one of" Defendant's Richmond-based yards and that Defendant previously employed more than 100 employees "based out of yards and similar work locations" throughout Virginia, (*see* Am. Compl. ¶¶ 6, 11), it would appear that Defendant maintained multiple "single site[s] of employment" throughout Virginia.[5] However, even assuming a Richmond-based yard is Plaintiffs' "home base," the Amended Complaint and affidavits do not assert how many employees worked at the Richmond-based yard who were terminated on October 22, 2021. Thus, the Court is still unable to determine whether the requisite number of employees were terminated at the Richmond-based yard in order to meet the definition of a "plant closing or mass layoff."

Absent additional allegations showing that Defendant terminated the requisite number of employees at its Richmond-based yard, or, alternatively, that the "Virginia-based yards" collectively constituted a "single site of employment" as defined in 20 C.F.R. § 639.3(i), Plaintiffs have failed to sufficiently allege that Defendant ordered either a "plant closing or mass layoff" as defined by the WARN Act. Because Plaintiffs have not alleged sufficient facts to show that Defendant is liable as a matter of law, default judgment is inappropriate.

---

[5] Moreover, in the Motion for Default Judgment, Plaintiffs acknowledge this deficit in their allegations asserting that the case, if litigated by Defendant, "could have presented novel and complex issues, including . . . whether [Defendant] operated from a 'single site of employment.'" (Mot. Def. J. at 6.)

## III. CONCLUSION

For the reasons set forth above, the undersigned RECOMMENDS that Plaintiffs' Motion for Default Judgment (ECF No. 12) be DENIED WITHOUT PREJUDICE.

Let the Clerk file a copy of this Report and Recommendation electronically, notify all counsel of record, and forward a copy to United States District Judge David J. Novak.

## NOTICE TO PARTIES

**Failure to file written objections to the proposed findings, conclusions and recommendations of the Magistrate Judge contained in the foregoing report within fourteen (14) days after being served with a copy of this report may result in the waiver of any right to a de novo review of the determinations contained in the report and such failure shall bar you from attacking on appeal the findings and conclusions accepted and adopted by the District Judge except upon grounds of plain error.**

                                                /s/
                                          Elizabeth W. Hanes
                                          United States Magistrate Judge

Richmond, Virginia
Date: July 21, 2022